[Cite as *Sprochi v. Cleveland State Univ.*, 2011-Ohio-1434.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

DAVID SPROCHI

    Plaintiff

    v.

CLEVELAND STATE UNIVERSITY

    Defendant
    Case No. 2007-05016

Judge Joseph T. Clark

DECISION

{¶ 1} Plaintiff filed this action alleging that defendant, Cleveland State University (CSU), committed a breach of his employment contract and that it violated the Fair Labor Standards Act (FLSA). Defendant contests plaintiff's breach of contract claim, but has admitted liability as to the claimed FLSA violations. However, the parties dispute the amount of damages to which plaintiff is entitled on the FLSA claim. The case was submitted to the court for determination on the parties' briefs, joint stipulations, and exhibits.

{¶ 2} In 1993, plaintiff was appointed to the part-time position of assistant men's baseball coach at CSU. His appointment was thereafter renewed annually through 2006. As stated in his last appointment letter, plaintiff's services were to be "rendered in accordance with the established policies of the University as set forth in the regulations and governed by applicable personnel policies of the Board of Trustees, and/or any negotiated contract to which you are subject." (Joint Exhibit 1.) It is undisputed that the Professional Staff Policies (the policies), dated October 2003, are the applicable policies

for plaintiff's position. (Stipulation ¶22, Joint Exhibit 13.) In a letter dated May 31, 2006, CSU's President, Michael Schwartz, notified plaintiff that the director of athletics had recommended that plaintiff's appointment not be renewed, and that the recommendation had been accepted. Plaintiff was further advised that his employment contract would expire on June 30, 2006. (Stipulation ¶26, Joint Exhibit 16.)

{¶ 3} Plaintiff contends that defendant's non-renewal of his appointment violated both the terms of his employment contract and the terms and conditions of defendant's policies. Specifically, plaintiff contends that the notice of non-renewal was untimely, that it was not based upon just cause, and that it was defective.

{¶ 4} A university employment contract "'composed of letters of appointments that incorporate the university's manual and resolutions adopted by the board of trustees, is expressly written and is therefore properly interpreted as a matter of law by the court.'" *Chan v. Miami Univ.*, 73 Ohio St.3d 52, 57, 1995-Ohio-226. In making its interpretation, the court is "bound by the consistent rule of law that 'an instrument must be considered and construed as a whole, taking it by the four corners as it were, and giving effect to every part; but when one part is certain on a given subject, and all the other parts are uncertain on that subject, the certain will prevail over the uncertain[.]'" Id. quoting *Brown v. Fowler* (1902), 65 Ohio St. 507, 523.

{¶ 5} With respect to the timeliness of plaintiff's non-renewal, the provisions of defendant's policies at Section 8.5.8, "Termination of Employment," are controlling. The relevant policies provide as follows:

{¶ 6} Section 8.5.8.3.3: "Recommendations for non-renewal will be made to the President and will be accompanied by documentation of support or lack of support from the appropriate administrative officers."

{¶ 7} Section 8.5.8.3.4: "Such recommendations will be sent to the President on or before the following dates:

{¶ 8} "* * *

{¶ 9} "(B) January 1 for a Professional Staff member holding a second or subsequent contract of professional service at the University for non-renewal of the contract.

{¶ 10} "* * *

{¶ 11} "(E) By June 1 for an intercollegiate coach holding a coaching season contract for the spring season."

{¶ 12} Section 8.5.8.3.5: "If the President concurs with the recommendation(s) of non-renewal, the President shall direct that a notice of non-renewal be sent * * * to the Professional Staff member's home address * * * within one month of the dates above * * *." (Stipulation ¶24, Joint Exhibit 13.)

{¶ 13} Plaintiff contends that, as a professional staff member holding a second or subsequent contract, Section 8.5.8.3.4(B) dictates that he should have been notified of the non-renewal of his appointment by February 1, 2006. The court disagrees. While that provision would also apply to plaintiff, the court finds that the more certain provision pertaining to coaching staff prevails. See *Chan*, supra. Moreover, as stated in the parties' Joint Exhibit 14, the CSU Board of Trustees revised the policies, effective September 24, 2003, to specify new non-renewal dates for intercollegiate coaches, including that set forth for the spring season at Section 8.5.8.3.4 (E) above. The board's resolution states that the change was necessary because "the [then existing] notification dates for coaches are prior to the end of their coaching season" and "the on-going evaluation of coaches is complete at the end of their coaching season." Accordingly, the only reasonable interpretation of the non-renewal provisions is that the recommendation for plaintiff's non-renewal had to be delivered to the president by June 1, 2006 (and it was), and the notice of non-renewal to plaintiff was required to be issued by July 1, 2006. Thus, the court concludes that the notice provided to plaintiff on May 31, 2006, was timely and in compliance with CSU's professional staff policies.

{¶ 14} Plaintiff next contends that defendant failed to demonstrate just cause for the non-renewal of his appointment. He argues that, as the holder of a second or subsequent contract, he was entitled to be apprised of the reasons for his non-renewal and that the athletic director's recommendation for the same should have been based upon a written performance evaluation. In support of those contentions, plaintiff relies upon the provisions of Sections 8.5.8.3.6 and 8.5.4.1. Those policies provide, in pertinent part:

{¶ 15} Section 8.5.8.3.6: "The Professional Staff member holding a second or subsequent contract of professional service * * * is entitled to be apprised of the reasons

for non-renewal and may request a review of the decision through the grievance procedures." (Stipulation ¶24, Joint Exhibit 13.)

**{¶ 16}** Section 8.5.4.1: "For full-and part-time employees the unit administrator will use written performance evaluation as the basis for personnel decisions such as merit increase in salary or re-appointment." (Stipulation ¶23, Joint Exhibit 13.)

**{¶ 17}** Plaintiff contends that staff members who hold second or subsequent contracts are entitled to an "elevated" status and additional entitlements such as those set forth in the above-quoted policies. According to plaintiff, the policy providing the right to be apprised of reasons for non-renewal, coupled with the right to file a grievance, demonstrates that defendant intended that just cause be required for non-renewal. He argues that such intent is further evidenced by the requirement for written performance evaluations. Inasmuch as defendant stipulated that CSU was aware of no complaints or criticisms concerning plaintiff's job performance (Stipulation ¶29), plaintiff concludes that defendant lacked just cause for his non-renewal.

**{¶ 18}** Upon review of the policies in their entirety, the court finds that neither of the above-quoted policies support plaintiff's arguments. Although Section 8.5.8.3.6 provides certain professional staff members with the right to be apprised of reasons for non-renewal, the court finds that the language of that policy simply grants a right to question the decision through the grievance process. There is no language in the policy indicating that a specific standard, such as just cause, is required for any non-renewal determinations. Further, the language of Section 8.5.4.1 clearly requires that performance evaluations be used in support of decisions such as salary increases and re-appointments, both of which concern continuing employment; there is no reference to evaluations of staff members whose employment will be terminated. The court finds that the more certain, controlling portion of the policies is found in Section 8.5.8 which sets forth the only recognized means of employment termination: "a Professional Staff employee may terminate through resignation, retirement, non-renewal, layoff, or *dismissal for just cause.*" (Emphasis added.) The court finds that it is apparent from the use of the term "just cause" only in connection with "dismissal" that just cause is not required to effect a termination through resignation, retirement, non-renewal, or layoff. Moreover, review of the sections specific to each of the bases for termination, other

than dismissal, reveals that no reference to just cause is included in those procedures. Accordingly, the court concludes that defendant was not required to demonstrate just cause for non-renewal of plaintiff's appointment.

{¶ 19} Finally, plaintiff argues that his non-renewal was defective inasmuch as it did not apprise him of the reasons for such action as required under Section 8.5.8.3.6 and, therefore, is a nullity. As stated previously, the court finds that Section 8.5.8.3.6 simply grants a right to question a non-renewal decision through the grievance process. The court further finds that there is no language in the policy that can reasonably be construed to mandate that written justification for non-renewal be included within the notice. Accordingly, the court concludes that plaintiff's notice of non-renewal was not defective.

{¶ 20} In summary, the court finds that defendant's non-renewal of plaintiff's appointment did not violate either the terms of his employment contract or the provisions of defendant's staff policies. Thus, plaintiff failed to prove his breach of contract claim.

{¶ 21} Turning to the FLSA claim, plaintiff is seeking compensation for certain unpaid wages for the period from August 23, 2004 to June 30, 2006. In a memorandum dated August 20, 2004, plaintiff was informed that, pursuant to new FLSA regulations, effective August 23, 2004, his position was no longer exempt from the FLSA, that he would henceforth be an hourly employee and that, as such, he would be eligible for compensatory and overtime pay. (Stipulation ¶7, Joint Exhibit 3.)

{¶ 22} In 2004 and 2005, plaintiff was budgeted to work only eight hours per week (16 hours per two-week pay period). For a period of time, plaintiff and Head Coach Jay Murphy maintained accurate records of plaintiff's work hours, and plaintiff was allowed to accrue compensatory time for the hours worked in excess of his budgeted hours. However, that practice was later questioned by CSU's payroll department staff. It was subsequently determined that plaintiff was not entitled to compensatory time unless he worked in excess of 40 hours per week; he was then required to repay CSU for ten hours of such time that he had used. At some point, maintenance of plaintiff's payroll records was transferred to a staff member serving under CSU's director of athletics and, regardless of the number of hours which he

actually worked, his payroll records thereafter reflected only the number of hours for which he was budgeted. That continued until April 2005, when plaintiff was called to a meeting with CSU's human resources compensation officials who advised plaintiff that he should have been credited for time at a rate of one hour for each hour worked in excess of his budgeted hours, up to 40 hours per week, and a rate of 1.5 hours for each hour worked over 40 hours per week. (Stipulations ¶8-13.)

{¶ 23} The parties agree that plaintiff's hourly pay rate for the time period in question was $19.77, but that the time sheets kept by CSU do not accurately reflect the hours that he worked. (Stipulations ¶6 and 14.) Plaintiff has estimated that he worked at least 1,210.03 hours for which he was not paid by CSU during the period from August 23, 2004 through June 30, 2006. The estimate is supported by an affidavit of Coach Murphy (Stipulation ¶17) and is based upon the following records maintained for the time period in question: 1) box scores reflecting the time required to complete each baseball game played and the length of time that plaintiff worked prior to and after each game; 2) travel itineraries for time spent traveling to-and-from away games; 3) NCAA compliance forms reflecting the countable athletically-related activities in which the students were required to participate; 4) telephone logs reflecting all telephone calls to and from plaintiff's work telephone; and 5) records of baseball camps and clinics conducted by the coaching staff. (Stipulation ¶15, Joint Exhibits 7-10.) Defendant has stipulated that the information reflected in those records has been accurately summarized. (Stipulation ¶16.)

{¶ 24} In its trial brief, defendant does not contest plaintiff's estimate of unpaid wages, but argues that the amount sought is limited by the two-year statute of limitations set forth under R.C. 2743.16(A).[1] Because plaintiff filed this action on May 10, 2007, defendant contends that plaintiff is not entitled to any unpaid wages that accrued prior to May 10, 2005. Defendant concedes that it did not assert the statute of limitations as an affirmative defense in its answer, but seeks leave to do so by

---

[1]R.C. 2743.16(A) states in pertinent par that: "[C]ivil actions against the state permitted by sections 2743.01 to 2743.20 of the Revised Code shall be commenced no later than two years after the date of accrual of the cause of action * * *."

amendment pursuant to Civ.R.15(A). A proposed amended answer is attached to defendant's brief.

{¶ 25} Upon review, defendant's motion for leave to amend is not well-taken. The Supreme Court of Ohio has addressed the issue of the time period within which an affirmative defense must be pleaded. "Where the bar of the [affirmative defense] is not presented as a defense either by [a] motion [to dismiss] before pleading pursuant to Civ.R. 12(B), or affirmatively in a responsive pleading pursuant to Civ.R. 8(C), or by amendment made under Civ.R. 15, then the defense is waived under Civ.R. 12(H), and a motion raising the defense at trial is not timely made." *Mills v. Whitehouse Trucking Co.* (1974), 40 Ohio St.2d 55, syllabus. See also *Alternatives Unlimited-Special, Inc. v. Ohio Dept. of Educ.*, Franklin App. No. 09AP-756, 2010-Ohio-1226, ¶15; *Marok v. The Ohio State Univ.*, Franklin App. No. 07AP-921, 2008-Ohio-3170. Here, defendant's motion to amend its answer after the case has been submitted for determination on the merits is likewise untimely made. Therefore, the motion is DENIED.

{¶ 26} Having otherwise accepted that plaintiff's estimate of his unpaid wages is accurate, the court concludes that plaintiff is entitled to an award of $23,922.29 ($19.77 x 1,210.03) for unpaid wages. Further, the FLSA provides for an award of an additional, equal amount, in liquidated damages, as well as reasonable attorney's fees.[2] Specifically, FLSA Section 216 (b), Title 29, U.S.C., provides in pertinent part that:

{¶ 27} "Any employer who violates the provisions of section 206 [minimum wage] or section 207 [overtime wages] of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, *and in an additional equal amount as liquidated damages.* * * *

{¶ 28} "An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction * * *.

{¶ 29} "The court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, *allow a reasonable attorney's fee to be paid by the defendant*, and costs of the action." (Emphasis added.)

{¶ 30} Defendant has not disputed either of these elements of plaintiff's damages. Accordingly, plaintiff is entitled to liquidated damages in an amount equal to his award of unpaid wages, or $23,922.29. The parties have stipulated that plaintiff's counsel has spent 150 hours representing plaintiff in this matter, that counsel's customary hourly rate is $150 per hour, and that both the time spent and hourly rate are reasonable. (Stipulations ¶19-20.) Therefore, plaintiff is further entitled to an award of reasonable attorney fees in the amount of $22,500 ($150 x 150).

{¶ 31} Based upon the foregoing, judgment shall be entered in favor of defendant on plaintiff's breach of contract claim, but in favor of plaintiff on the FLSA claim. Damages shall be awarded in the total amount of $70,344.58 ($23,922.29 + $23,922.29 + $22,500) plus the $25 filing fee.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

DAVID SPROCHI

    Plaintiff

    v.

CLEVELAND STATE UNIVERSITY

    Defendant
    Case No. 2007-05016

Judge Joseph T. Clark

JUDGMENT ENTRY

---

[2]Additionally, in an entry dated January 24, 2008, the court granted plaintiff's motion for reinstatement of his claim for attorney fees based upon FLSA, 29 U.S.C. 201, et.seq.

This case was submitted to the court for determination on the issues of liability and damages based upon the parties' briefs, joint stipulations, and exhibits. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant on plaintiff's breach of contract claim.

However, judgment is rendered in favor of plaintiff on his Fair Labor Standards Act claim in the amount of $70,369.58, which includes the filing fee paid by plaintiff. Court costs are assessed against defendant. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
JOSEPH T. CLARK
Judge

cc:

Patrick J. Gallagher
The Rockefeller Building
614 West Superior Avenue, Suite 1300
Cleveland, Ohio 44113

Randall W. Knutti
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

LH/cmd
Filed March 15, 2011/To S.C. reporter March 22, 2011